No. 141.—F. W. FICKLING, Trustee, *v.* JOHN J. MARSHALL, Executor.

A bond was executed for borrowed money from a trustee, secured by a mortgage on slaves, and the mortgagor sold the slaves to a third person, who, as a part of the price, executed his bond to the trustee, and the trustee thereupon released the original obligor. Held, That the consideration of the latter obligation, as between the trustee and the purchaser, was not a sale of slaves, and was therefore valid.

The Supreme Court of the United States is the proper tribunal to decide finally upon the validity and effect of the acts of Congress, and the State courts should follow its decisions. Therefore, it having been decided by that tribunal that the legal tender act of February, 1862, does not apply to contracts made before its passage, the courts of Louisiana will render judgment thereon in gold.

APPEAL from the District Court, parish of Caddo. *James W. Duncan* (attorney at law), Special Judge, *vice* Levisee, J., recused. *S. L. Taylor,* for plaintiff and appellee. *George Williamson,* and *Nutt & Leonard,* for defendant and appellant.

HOWE, J. This suit was instituted upon the following obligation.

"THE STATE OF ALABAMA, ⎱
"Montgomery County.   ⎰

" Whereas D. H. Trezevant, of Richland district, in the State of South Carolina, did by his deed, under his hand and seal, bearing date the thirteenth day of July, A. D. 1849,   *   *   *   assign, transfer and deliver to Francis W. Fickling, Esq., certain securities for certain moneys, in trust for certain purposes and uses, and under certain limitations and restrictions, and with certain provisos and conditions in said deed expressed and declared; and whereas, the said Trezevant, by virtue of a power to him reserved in said deed, did on the first day of October, 1852, lend unto Edward F. Taylor the sum of six thousand dollars, being money arising from said securities, and which debt of the said Edward F. Taylor was secured by his bond of said last date, and by his deed, commonly called a mortgage, also of that date, recorded in the office of the probate court of Montgomery county, and State of Alabama, in book No. 4, pages 15, 16, 17 and 18; and also by another deed made by said Edward F. Taylor, of date of the ninth of May, 1855, and also recorded in the office of said probate court in book No. 7, on pages 84, 85; and whereas, said bond was made to the said Francis W. Fickling, as trustee, *for the purposes and uses aforesaid, and which debt* now amounts to the sum of six thousand six hundred and thirty-five dollars and thirty-five cents, and for which *last said,*

*sum* I, Henry Marshall, *have become bound* to pay the said Francis W. Fickling, trustee as aforesaid, for a valuable consideration, upon the terms hereafter mentioned.

"Now, therefore, know all men by these presents that I, the said Henry Marshall, am held and firmly bound unto the said Francis (in trust, nevertheless, and to and for the uses and purposes, and under and subject to the restrictions, limitations, provisos and conditions expressed and declared in and by the above recited deed of said Treze-vant), in the full and just sum of thirteen thousand two hundred and seventy dollars and seventy cents, to be paid to the said Francis W. Fickling, his executors, administrators or assigns, to which payment, well and truly to be made and done, I do hereby bind myself, my heirs, executors and administrators, jointly and severally by these presents.

"In witness whereof I have hereto set my hand and seal this thirteenth day of January, 1858.

"The condition of the above obligation is such that if the above bounden Henry Marshall shall and do well and truly pay or cause to be paid unto the above named Francis W. Fickling (or to the said D. H. Trezevant, or to such person or persons as shall or may be duly substituted by the said D. H. Trezevant, as trustee to the above recited deed, made by him), his or their certain attorney, executors, administrators or assigns, the full and just sum of six thousand six hundred thirty-five dollars and thirty-five cents, in two equal annual installments, that is to say, the sum of three thousand three hundred and seventeen dollars and sixty-seven and a half cents, on the thirtieth day of January, 1859, and the same sum on the thirtieth day of January, 1860, with interest on the whole, to be paid annually at the rate of eight per cent. per annum from the date of these presents, then the above obligation to be void and of no effect, or else to remain in full force and virtue.      HENRY MARSHALL."

The plaintiff claims the amount due upon this instrument in specie.

The defendant filed his answer and amended answer, and the principal issue raised by the pleadings is, whether the sale of slaves was the consideration of the contract on which the suit is brought.

It appears from the evidence that the bond given by Taylor was for money loaned by the plaintiff, a trustee of a wife and minor children; that the mortgages referred to in the instrument above quoted, were given by Taylor to secure this bond, and were upon certain lands and certain slaves; that in January, 1858, Taylor was in embarrassed circumstances, and the plaintiff deemed it his duty, as trustee, to collect or secure the debt; and that for this purpose he employed John A. Elmore, Esq., a lawyer of Montgomery, Alabama. His first letter to Elmore, which is in evidence, contains language which may throw some light on his intentions. He says :

64

"A Mr. Henry Marshall (whether of your State or this, I don't know), proposes to purchase the negroes, and in order to aid Taylor, we are willing to let him (Marshall) have the *loan* of the entire principal, on his paying the interest and securing the debt beyond a possibility of loss. He can have a credit of three, four or even five years, if he wishes it. * * * As this money belongs to a woman, with a swarm of children, I want to save them all I can."

In a subsequent letter he writes as if he had in contemplation the seizure of the slaves and their sale by himself as mortgagee, but he does not abandon the plan suggested in his first letter, for he says to Elmore : "I leave the entire matter in your hands, to do for me as you would for yourself, with full authority to give such credit as you may think proper, and to take such securities as you may deem necessary for the protection of the fund." He also appears to have learned that Marshall resided in Louisiana, and as the slaves would be removed to this State, suggests that any mortgage taken from Marshall should be recorded in Louisiana.

The business was finally settled under the supervision and advice of Elmore, as follows : Taylor sold the slaves to Marshall, and the latter agreed with Taylor, as part of the price, to assume the debt due by Taylor to plaintiff. Elmore, on behalf of plaintiff, consented to this substitution; surrendered the bond of Taylor; took the one in suit, and released the mortgage given by Taylor on the slaves. And here we must consider the real effect of a deed executed at this point by Elmore, as attorney of plaintiff. It is in form, to a certain extent, an act of sale from plaintiff to Marshall, of the slaves in question. It recites the mortgage on them given by Taylor, which had in form (and form only) conveyed them to plaintiff. It further recites that the plaintiff had taken possession of the said slaves under the powers conferred by the mortgage, and had sold them to Marshall in consideration of a sum identical with that due by the terms of the obligation in suit. It then proceeds to declare that Fickling bargains, sells and delivers to Marshall the said negroes—conveying, however, only the right, title and interest of the said Taylor, and such as was vested in the plaintiff by the mortgage. But we are justified by the relations of the parties and the facts of the case, in looking beyond the form and shadow of this deed, and considering its substance. The facts are, that plaintiff never owned the slaves; never took possession of them, and never sold them. The witness, Elmore, says that the deed was made at the instance of Marshall, and to protect and secure his title to the slaves, as against subsequent mortgages. With that the present controversy has nothing to do. The important fact is, that, as the witness, Elmore, suggests, this pretended sale was not the consideration of the bond in suit.

The consideration of that bond is directly set forth on its face. The debt due by Taylor was for money borrowed from a sacred fund. Marshall, for a consideration moving from Taylor, but with which the plaintiff had no relation, assumed this debt—"which debt," says the bond, "*now* amounts to $6635 35;" "for which sum," continues the bond, "I, Henry Marshall, have become bound to pay the said Francis W. Fickling, trustee, for a valuable consideration." By this assumption the character of the debt was in no way changed. It was still a debt for borrowed money, as the investment declares, the only change being that Marshall was to pay it, instead of Taylor. And, as between the plaintiff and Marshall there was a consideration which would support the promise of the latter, even though as between Taylor and Marshall, a consideration was wanting, or had failed, or was unlawful. For, upon the faith of Marshall's promise, Taylor was released by plaintiff, and the mortgage upon lands, as well as slaves, extinguished. Pothier on Obligations, 111, C., art. 1; Violett *v.* Patton, 5 Cranch 142; Stebbins *v.* Smith, 4 Pick. 97; N. O. *v.* Chapman 8 An. 98.

What, then, was the debt evidenced by the bond in suit? A claim or borrowed money. What was the consideration for its assumption by Marshall, as between plaintiff and Marshall? The release of Taylor and the extinguishment thereby of his accessory obligations of mortgage.

The plaintiff has prayed for an amendment of the judgment, demanding that it be for the amount of the claim in specie, inasmuch as the bond was executed before the act of Congress of February, 1862, sometimes called the Legal Tender Act.

The Supreme Court of the United States is the proper tribunal to decide finally upon the validity and effect of the acts of Congress, and the State courts should follow its decisions; in the same manner as in matters of local jurisprudence, the courts of the United States are bound to follow the decisions of the State courts. Since, therefore, in the case of Hepburn *v.* Griswold, lately decided, it has been held by the Supreme Court of the United States that the act of Congress in question does not apply to contracts made before its passage, we feel bound to amend the judgment as prayed for.

The defendant, since the case was argued and submitted in this court, has filed a plea of prescription, but we can not pass upon it. The right to file a plea in this court must be exercised, as in the lower court, before the case is tried and submitted.

For the reasons given, it is ordered that the judgment appealed from be amended so as to decree to the plaintiff the sum accorded by said judment, in gold coin of the United States; that as thus amended the judgment be affirmed, and that the appellant pay the costs of appeal.

Rehearing refused.